[No. 11316.    Department Two.    December 31, 1913.]

Ignacio Sartori et al., Respondents, v. Denny-Renton
Clay & Coal Company, Appellant.[1]

Boundaries—Streams—Meander Lines—Evidence—Sufficiency.
Where the thread of a constantly changing stream was fixed as a
boundary line at a certain date, the government meander lines, run
many years before, do not control the boundary as against a subse-
quent survey and other evidence tending to show the location of
the stream at the time it was fixed upon as the boundary line.

Same—Evidence—Acquiescence—Area. Where a line, acquiesced
in for some time, gives the true area of adjoining tracts, it is strong
evidence of the true boundary line.

Actions—Joinder—Equity and Law—Damages—Jurisdiction in
Equity. In an equitable suit to establish the thread of a stream as
a boundary line, there may be joined a claim for damages for ob-
structing the stream, where objection is not raised below, and equity
having acquired jurisdiction may grant full relief.

Appeal from a judgment of the superior court for King
county, Dykeman, J., entered February 6, 1913, upon findings
in favor of the plaintiffs, in an action to establish a boundary
line, and for damages.    Affirmed.

Ballinger, Battle, Hulbert & Shorts and Paul W. Houser,
for appellant.

Peters & Powell, for respondents.

Morris, J.—This is an action to establish the boundary
line between the lands of the parties hereto, located upon op-
posite shores of Cedar river, not far from Renton, the re-
spondents' lands being upon the north side and the appel-
lant's upon the south side of the river.    The contention of
respondents was that the center line or thread of Cedar river,
as it existed January 1, 1908, should be held to be the true
boundary line; while appellant contended that the true bound-
ary line should be fixed as the thread of Cedar river as it ex-

[1]Reported in 137 Pac. 494.

isted long prior to 1908, and as far back as 1865, when Cedar river was meandered, and that the thread of the stream as shown by these meander lines, except as modified by adverse possession, estoppel, and accretion, should now be held to be the true line.

In addition to praying for the establishment of the boundary line, respondents alleged that appellant was engaged in the manufacture of brick and clay products, and that for some years past it had deposited large quantities of earth and stone in the river and along the south bank, until it had filled in the natural channel of the river opposite respondents' lands to such an extent as to impede the natural flow of the river and deflect the force of the stream upon and against the lands of respondents upon the north bank; and, as a consequence thereof, during a period of high water in November, 1911, the waters of the river cut into and washed away the fertile surface soil of respondents' lands to the extent of eleven acres, causing damage in the sum of $16,500. Issue was framed upon these contentions, and the case went to trial, resulting in a decree establishing the boundary line between the lands of appellant and respondents as the thread of Cedar river as found by a survey made in December, 1906; and as it was also found to exist for many years prior thereto. The decree also awarded respondents damages because of the acts of appellant in extending the south bank of the river, to the consequent injury of respondents' lands, in the sum of $1,200. The decree fixed the course of the north and south banks of the river and the course of the thread of the stream; and further enjoined appellant from depositing earth, stone, or other material in the channel of the river, as defined by the courses fixed in the decree. From this decree, appeal has been taken.

There can be no dispute but that the thread of Cedar river was fixed as the true boundary line between the lands of appellant and respondents. The difficulty is in now determining where was Cedar river and where was the thread of the river at the time it was so fixed. In determining this ques-

tion, one might as well look for the proverbial needle in the haystack as to now attempt to fix this original boundary with any degree of certainty, due to the fact that Cedar river is a rapidly flowing mountain stream, having an average fall, where it passes through these lands, of twenty-seven feet to a mile, and has a bad habit of changing its location and flow and establishing a new channel every few years. A number of maps are in evidence showing the location of the stream in various years, from which it is apparent that the river has not followed the same courses for many successive years, and in a very few instances only do these maps show the course of the river within the meander lines of 1865. While, therefore, we must admit that the thread of the stream as originally established is the true boundary line between these lands, the difficulty, as before indicated, is in determining where that line now is; and after reading this record and studying the plats and exhibits, we confess a difficulty in arriving at a satisfactory conclusion.

The meander lines shown in the survey of 1865 are from 180 to 250 feet apart. The normal flow of the river is shown as from forty to ninety feet in width, so that, if it be assumed that the river was wholly within these meander lines in 1865, we are still in the dark as to where within these lines the thread of the stream would be. Ordinarily, meander lines are not intended nor recognized as boundary lines, but only as lines intended to indicate the sinuosities of the stream. It is, therefore, not unusual to find streams at places entirely without meander lines. As illustrating the difficulty of fixing the meander lines as bounding the stream, it is shown in this record that, in places within these meander lines, trees are growing to which witnesses ascribe a growth of from ten to sixty years. Many witnesses gave their opinion as to the location of the river in past years, but as these opinions were all based upon what each witness recalled as to the existence and location of certain land marks which are now obliterated, due in some instances to floods and high water and in others to changes

occasioned by the dumping of its waste material by appellant, the best the witnesses could do was to indicate where, in their judgment, the channel was at the time covered by their testimony. Necessarily there is a great conflict where witnesses attempt to point out or to indicate the location of a stream and its banks, when by reason of changes natural or otherwise it is impossible to indicate the location upon the ground, and such testimony cannot be otherwise than unsatisfactory and unreliable. The trial judge, realizing this, attempted to satisfy himself as to the location of this boundary line by making, in company with respective counsel, a personal examination of the location is question, and endeavored to trace and follow the different channels of the river as existing in various years, by means of soundings with a steel rod; and having done so, became convinced that the channel, as shown by the survey taken in 1906, was the channel which should be adopted as the true course of the river between the lands of appellant and respondents. There is abundant evidence in this record to establish this channel, which was surveyed before the fill complained of and before the obliteration of the south bank of the river, and at a time when there was at least some indicating evidence upon the ground as to the existence and course of the true channel. That this channel as shown by this survey existed in 1906, and for an indefinite period before that time, is, we think, well established by the evidence, and it conforms in many respects to a survey made by a grantor of appellant some time prior in which it was sought to determine the area included in the then ownership. This area as then found is approximately the same as found by the court in its decree, and the evidence is susceptible of a finding that it was conceded to be the true area as far back at least as 1898; and while such fact is not conclusive, it is strong evidence and entitled to great weight in cases of this kind when a line can be found that has for some time been acquiesced in as the true line.

We shall not attempt to answer all of appellant's attacks

upon the decree. We have gone over the record and attempted to follow the testimony as closely as it is possible to do when witnesses testify by reference to maps and plats; and having done so, we are satisfied that the lower court determined this boundary as accurately as it is now possible to determine it, and, not finding any preponderating evidence from which we can say the lower court was in error, we affirm the conclusion it has reached.

Upon the question of damages, appellant contends that, in actions of this character, it is not permissible to join a claim for damages. Appellant did not suggest this question until it made its argument to the court after the close of the evidence. It is clear that this is a suit in equity and, having obtained full jurisdiction, we think a court of equity can try out the whole controversy between the parties and afford such relief as it deems proper. The respondents stated their cause of action in their complaint and appellant answered thereto. The court was therefore authorized by both parties to try the issues thus made and to grant any relief embraced within these issues. We have frequently said that, in this state, the form of action is immaterial, and that in any action the court has power to try any question fairly within the issues submitted and to grant any relief warranted by the facts.

The judgment is affirmed.

CROW, C. J., PARKER, FULLERTON, and MOUNT, JJ., concur.